## Patterson's Estate.

Argued October 3, 1934. Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*E. C. Higbee,* of *Higbee, Matthews & Lewellyn,* with
him *E. D. Brown,* for appellant.

*E. Dale Field,* with him *Lee Smith,* for appellees.

OPINION BY MR. JUSTICE SIMPSON, November 26, 1934:
Effie Ansted, appellant herein, was the owner of 168
Coolspring Street, Uniontown, Pa. It was encumbered
by a mortgage of $5,000, to secure that amount borrowed
by her from her brother, George Patterson, to enable her
to erect a building upon the property. In regard to the
property and the mortgage, appellant and her brother
made three agreements, hereinafter more fully set forth,
dated February 8, 1928, January 5, 1929, and January
15, 1931, respectively.

George Patterson died intestate, while the title to the
property and the mortgage were still in his name, where-
upon appellant, who had an outstanding interest in the
property, filed a bill in equity against his administrator,
his widow and his heirs at law, requiring them "to show
cause why [the court] should not proceed to fix the price

to be paid by [appellant] for the land described in the petition, why an accounting of the rents received therefrom by decedent should not be stated, and why the contracts referred to in the petition should not be specifically performed, according to the true intent and meaning thereof." An order was made as requested, defendants appeared and answered, and the case was tried, resulting, after an adjudication, exceptions thereto and an opinion thereon, in a final decree dismissing the bill. Admittedly the true interpretation of the three agreements is the determinative factor in the case, and hence we at once turn to them, always remembering that the parties were brother and sister and, under the circumstances set forth in the agreements, they necessarily called for a favorable consideration so far as she was concerned.

The first agreement, which was executed by Mr. Patterson, the brother, party of the first part, and appellant and her husband, parties of the second part, recites, so far as relevant, that, whereas the parties of the second part own the Coolspring Street property, and whereas the party of the first part has advanced to them a sum of money for the erection of a two-story dwelling thereon, which is secured by a recorded mortgage and is to be returned in monthly installments, without interest. Now the agreement witnesseth that the parties of the second part are to pay for said house at the rate of $50 per month, without interest, until an amount not exceeding $5,000 has been paid either to the party of the first part or to his heirs, executors, administrators or assigns, after which "said mortgage is to be satisfied of record." "The amount to be paid for said house is to be left to the discretion of said party of the first part, but in no event is to exceed the sum aforesaid...... The said Effie Ansted, being a sister of said first party, and having been employed in his office for a number of years and having rendered valuable services, it is the desire of said first party to help her secure a home...... Taxes and

insurances to be taken care of by said first party." It is clear that, under this agreement, appellant could have enforced specific performance of the contract embodied therein.

The second of the agreements, dated January 5, 1929, recites that, "On the 11th day of December, 1928, at the instance of the party of the first part, the parties of the second part gave up their home in Uniontown, Pa., and rented the same to other tenants, and moved to Dunbar, Pa., to take charge of a business owned by the party of the first part and also to care for and look after the building owned by said party of the first part, to wit, The First National Bank Building.

"In order that said mortgage might be satisfied of record and that said first party could have full charge of said house and lot, renting the same, collecting rents, etc., a deed was executed and delivered to him by the parties of the second part, with the understanding and agreement, that the said first party, his heirs, executors, administrators or assigns will not sell or dispose of said property in any way, without giving said second parties, or either of them, the right to purchase the same under the conditions originally agreed upon." And then proceeds: "It is further agreed by the said party of the first part, his heirs, executors, administrators, or assigns, that in case the said Dunbar Electric Appliance Company should not remain in business after a period of two years, which is the time agreed upon between the parties, then notice will be given to the present tenants in said house, to vacate the same at the expiration of the lease now in force, and the said second parties to have the right to possession of the same.

"It is further agreed by the said party of the first part, that the rents collected from said house, while the parties of the second part are in Dunbar, Pa., will be deducted from the purchase price of said house, after the necessary expenses are deducted.

"This house was built for their home and they are to have first privilege to buy the same under the terms and conditions hereinbefore set forth, to wit, to pay for the same in monthly installments of $50.00 per month, without interest, to the said party of the first part, his heirs, executors, administrators, and assigns."

Under this agreement it is clear that appellant was entitled to have the property on the payment of a sum not exceeding $5,000 without interest. It would have been strange and unnatural if it had been otherwise, since, as shown, appellant's absence was on the business of her brother, as quoted in the agreement itself.

The third agreement, which is dated January 15, 1931, is a lease by decedent to appellant of a flat in the First National Bank Building at Dunbar, Pa. It provides that, should she remove from it, "the rents to be paid to her, as aforesaid, to be used to help support herself and children; they being dependent upon lessor [the brother] for support." On the back of the lease is written the following statement, signed by both parties: "It is the true intent of the lease that the said Effie Ansted [appellant] shall have protection for a home without payment of rent until my house at No. 168 Coolspring Street, Uniontown, Pa. [the property in controversy] is vacated at the expiration of the lease now in force; at which time she is to have possession of the same, free of rent, until a deed can be given for the same."

This is a most important document. It shows that the agreement in relation to the property is still in force, and is to be carried into effect. But when? Under the prior agreements the rent of the property was to be paid to testator, and by him applied to the purchase price of the property, until it, as fixed by him, was paid in full. Now appellant is to occupy the building "free of rent, until a deed can be given for the same." Now his right to the rent ceases and a deed is to be made to appellant. This implies that no further rent was to be charged against appellant, because that already received has

fully paid the purchase price as fixed by testator. Hence, if there is no definite evidence to the contrary, which will affect the normal meaning of the words used, in the circumstances here appearing, and there is none, it is fairly to be implied that the rent collected by testator was sufficient in amount to fully pay appellant's debt to him; hence she is to pay no further rent and a deed is to be made to her. The authorities relating to gifts relied on by appellees, have no relevancy here. Decedent did not make a gift to appellant; he sold to her a property at a price which he fixed, and which she paid in the way which he himself provided.

The decree of the court below is reversed at the cost of appellees and the record is remitted that a decree may be entered in favor of appellant requiring appellees to make a fee simple deed to her for the property in dispute, free and clear of all liens, claims and charges, and requiring that the $5,000 mortgage on the property, held by testator, is to be satisfied of record by the Second National Bank of Uniontown, administrator of his estate.